IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lawrence Peterson,                      :
                                        : No. 1786 C.D. 2015
                    Petitioner          : Submitted: April 15, 2016
                                        :
            v.                          :
                                        :
Pennsylvania Department of              :
Corrections,                            :
                                        :
                    Respondent          :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED: July 28, 2016


        Lawrence Peterson (Requester), *pro se*, petitions for review from a
final determination of the Office of Open Records (OOR) that denied his appeal
from the Pennsylvania Department of Corrections' (Department) response to his
request under the Right-to-Know Law (RTKL).[1] Requester argues OOR erred or
abused its authority in finding the entire record exempt from disclosure without
determining whether the redaction of any non-disclosable information was
possible. Upon review, we affirm.

        Requester, who is an inmate at the State Correctional Institution (SCI)
at Smithfield, filed a request for records regarding the Department's transportation
of inmate William Keitel (Keitel) to the hospital in August 2013, including the

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

names of the corrections officers who transported Keitel or stood guard at the hospital. He also requested all incident reports completed by those officers.[2]

The Department denied the request on the basis the records are exempt from disclosure under Section 708 of the RTKL, 65 P.S. §67.708. Specifically, the Department asserted the release of records would threaten personal security and public safety and were exempt under Sections 708(b)(1)(ii) and 708(b)(2) of the RTKL, 65 P.S. §§67.708(b)(1)(ii), (b)(2). The Department also claimed the records related to both criminal and noncriminal investigations and were exempt under Sections 708(b)(16) and 708(b)(17) of the RTKL, 65 P.S. §§67.708(b)(16), (17).

Requester appealed to OOR challenging the denial and asserting grounds for disclosure. OOR invited the parties to supplement the record, and it directed the Department to notify third parties of their ability to participate in the appeal pursuant to Section 1101(c) of the RTKL, 65 P.S. §67.1101(c). The Department submitted a position statement, along with declarations made under penalty of perjury of James C. Barnacle, Director of the Department's Office of Special Investigations and Intelligence (Director Barnacle), and Major Victor Mirarchi, the Department's Chief of Security (Major Mirarchi).[3]

---

[2] Specifically, he requested:

> I'm writing in regards to the following information regarding to be in receipt of all the names of the correctional officers that was [sic] involved with the transport to the UPMC – Altoona Hospital and guard duty at the hospital for the inmate William Keitel DU-3644 on date 8-8-13 to 8-9-13 and all their incident reports while on duty at the Hospital.

Certified Record (C.R.), Item No. 1 (RTKL Request).

[3] Requester also made a submission reasserting his position that the records are subject to disclosure. However, because it was received after the record closed, OOR did not consider it. OOR's Final Determination, 9/3/2015, at 2 n.1.

2

In a response to an OOR clarification request, the Department made an additional submission confirming that an "Extraordinary Occurrence Report" (Report) is the only record responsive to the request. The Report contains the names of the corrections officers, who transported Keitel and held guard at the hospital, and their incident reports while on duty at the hospital. Additionally, it describes the extraordinary occurrence of Keitel's death, and contains reports by each staff member involved in the extraordinary occurrence, as well as the appropriate investigation or response to the occurrence, including any disciplinary action.

Major Mirarchi affirmed the Report at issue details the events surrounding the extraordinary occurrence of Keitel's death. Requester assaulted Keitel, who was his cellmate. Keitel died as a result of the assault. Requester was charged with and pled guilty to first degree murder, and he is now serving a life sentence as a result. Requester is seeking information about the events surrounding his crime. Major Mirarchi attested that releasing the Report and the names of the corrections officers would place those corrections officers at risk for retribution for their involvement in a matter, which led to Requester receiving a life sentence in prison.

Director Barnacle described the nature of extraordinary occurrence reports as important investigatory tools used to identify security risks in the prison. He attested public disclosure of the contents of the Report would threaten the personal security of individuals named in the Report.

OOR determined the Report is the only record responsive to the request. Further, OOR concluded that if the Report was released, it would produce a substantial and demonstrable risk of retaliation to the individuals involved in the

3

incident. OOR determined the Report was exempt from disclosure under the personal safety exception under Section 708(b)(1)(ii) of the RTKL. In light of this disposition, OOR did not examine the Department's alternative grounds for denying access.

Requester then petitioned this Court for review.[4] Requester contends OOR erred or abused its discretion when it ruled the entire Report is not a public record subject to disclosure without determining whether the redaction of any non-disclosable information was possible. He claims the Department has an obligation to disclose the non-exempt portions of this Report. Primarily, he argues the names of the corrections officers, who received payment from the Department for overtime when they transported Keitel to the hospital and stood guard there, are not exempt from disclosure.[5] According to Requester, the Report details the abuse corrections officers inflicted on Keitel.

A "public record" is defined in part as "[a] record, including a financial record, of a Commonwealth . . . agency that: (1) is not exempt under [S]ection 708 . . . ." Section 102 of the RTKL, 65 P.S. §67.102. Section 708(b)(1)(ii) of the RTKL exempts records that "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal

---

[4] This Court has jurisdiction over final determinations involving Commonwealth agencies, such as the Department. Section 1301(a) of the RTKL, 65 P.S. §67.1301(a). For appeals from determinations made by the OOR involving Commonwealth agencies, our standard of review is *de novo* and our scope of review is plenary. *Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013).

[5] In his appeal to this Court, Requester now claims he is entitled to the corrections officers' salary information. However, Requester did not seek any financial information in his original request. *See* C.R., Item No. 1 (RTKL Request). In fact, Requester did not even raise this issue before OOR. *See* C.R., Item No. 1 (Appeal). Requesters cannot change their RTKL requests on appeal. *Pennsylvania State Police v. Office of Open Records*, 995 A.2d 515, 516 (Pa. Cmwlth. 2010). Consequently, we will not address this issue on appeal.

4

security of an individual."  65 P.S. §67.708(b)(1)(ii).  "Personal security issues are of particular concern in a prison setting."  *Carey v. Pennsylvania Department of Corrections*, 61 A.3d 367, 374 (Pa. Cmwlth. 2013); *see Commonwealth v. Dugger*, 486 A.2d 382, 384 (Pa. 1985) ("A prison setting involves unique concerns and security risks . . . .").  The personal security exception "embraces two notions:  risk of physical harm and the risk to one's personal security," which can include financial harm.  *Delaware County v. Schaefer ex rel. Philadelphia Inquirer*, 45 A.3d 1149, 1154 (Pa. Cmwlth. 2012) (*en banc*); *accord Governor's Office of Administration v. Purcell*, 35 A.3d 811, 820 (Pa. Cmwlth. 2011).

The agency receiving the request bears the burden of proving the record is exempt by a preponderance of the evidence.  Section 708(a) of the RTKL, 65 P.S. §67.708(a).  The preponderance of the evidence standard, which is "the lowest evidentiary standard, is tantamount to a more likely than not inquiry."  *Delaware County*, 45 A.3d at 1156.

To meet the personal security exemption, an agency must show by preponderance of the evidence: "(1) a 'reasonable likelihood' of (2) 'substantial and demonstrable risk' to a person's personal security."  *Delaware County*, 45 A.3d at 1156 (quoting Section 708(b)(1)(ii) of RTKL).  A reasonable likelihood requires more than speculation.  *Id.* at 1158 (a general report regarding identity theft did not suffice).  A substantial and demonstrable risk means real, apparent, or evident.  *Purcell*, 35 A.3d at 820.

An agency can meet its burden of proof through affidavits.  *Moore v. Office of Open Records*, 992 A.2d 907 (Pa. Cmwlth. 2010).  The Court must consider whether the affidavit includes detailed information describing the nature of the records requested, and specific information connecting the nature of the

5

records to the likelihood that disclosing them would threaten personal safety in the manner described. *See Carey*, 61 A.3d at 376. "Given the heightened risk associated with prisons, representations regarding perceived threats to individual [Department] personnel posed by inmates are persuasive." *Carey*, 61 A.3d at 374. However, conclusive or generalized affidavits based on mere speculation as to possible harm are insufficient. *Office of the Governor v. Scolforo*, 65 A.3d 1095 (Pa. Cmwlth. 2013) (*en banc*); *Carey*, 61 A.3d at 376; *see Purcell*, 35 A.3d at 818-819. Where a sworn statement is "the result of extensive experience," it is founded on more than speculation. *Carey*, 61 A.3d at 376-377.

Here, Requester seeks records that pertain to his murder of his cellmate. In response, the Department presented the declarations of Director Barnacle and Major Mirarchi. Director Barnacle, who was appointed to the director position in 2008, is responsible for the supervision of criminal and noncriminal investigations pertaining to allegations of staff and inmate misconduct within the Department. Prior to his appointment, he served as an agent and agent supervisor with the Federal Bureau of Investigation for a combined total of 31 years. Director Barnacle described the nature of extraordinary occurrence reports and the danger presented by releasing such reports as well as the identities of individuals involved in the reports. He attested:

> 7. Extraordinary occurrences are occurrences that have a significant impact, or potential for a significant impact, upon the public, staff, inmates, the operation of the Department, etc.
>
> 8. Extraordinary occurrences range in character from events involving small numbers of individuals (such as incidents of violence or sexual assault) to matters affecting large scale operations, such as a lock-down of an institution.

6

9. An Extraordinary Occurrence Report is a tool used by the senior staff to identify and detect issues, principally security issues, that should be addressed or which warrant further review or attention, as well as to determine efficacy of existing policies and practices by capturing and reviewing specified information.

\*\*\*

11. The requested record contains a detailed description of the extraordinary occurrence; a report by each staff member involved in the extraordinary occurrence; the appropriate investigation and/or other responses to the occurrence, including, if any, the issuance of any disciplinary action.

\*\*\*

13. Public disclosure of the Extraordinary Occurrence Report and the information contained therein would result in grave security issues at correctional institutions.

14. Public disclosure of the contents of investigational records, such as the Extraordinary Occurrence Report, to unauthorized individuals would deprive the affected inmate or inmates, affected staff and/or the alleged abuser of the right to an impartial review of the underlying matter. Staff, inmates, or others who may be adversely interested in the investigation would be aware of its existence and the allegations and would be likely to subject the witnesses, alleged victim/abuser or reviewing investigator to threats, manipulation, abuse or other pressure to obtain a particular result.

15. Public disclosure of investigational records is reasonably likely to result in retaliation by inmates and staff whose alleged misbehavior is described in the investigational records. Such individuals would be reasonably likely to identify, harass, threaten or retaliate against the inmate or the other persons identified in the investigational records.

7

16. Moreover, such individuals would be put on notice to change behavior or destroy evidence related to the investigation, thereby jeopardizing the ability of the Department investigator to gather all relevant facts and reach an impartial or just conclusion with regard to the merits of the investigation.

\*\*\*

20. Public availability of investigational records would hinder the Department's ability to secure administrative or civil sanctions or pursue criminal charges in appropriate cases.

\*\*\*

24. Violent attacks are always a real danger in the prison context and violent retaliation will result in disclosure of investigational records which describe which individuals provided information related to the investigation.

25. Inmates that are the object of the allegations (or those allied with such inmates and staff, by virtue of friendship, familial relationship, intimate relationship or gang membership) will retaliate against individuals that provide information, which they determine to be unfavorable, to investigators.

26. In certain situations, the object of the allegations may be retaliated against because of the nature of the allegations (i.e. sexual abuse, threats of violence or physical assault).

Certified Record (C.R.), Item No. 3 (Declaration of James C. Barnacle).

Major Mirarchi's declaration described the specific nature of the Report requested and the danger to the corrections officers' personal security if the information is released in this particular case. As Chief of Security, Major Mirarchi oversees security aspects of the Department. He attested:

8

5. On August 2, 2013, the Requester assaulted his then cellmate, William Keitel, which ultimately resulted in Keitel's death.

6. The Requester ultimately plead [sic] guilty to first degree murder and received a life sentence in prison in addition to the 40 to 80 year robbery sentence he had been serving.

7. Now, the Requester is seeking the names of corrections officers who transported Keitel the day the Requester assaulted him and who stayed with Keitel at the hospital.

8. Providing the Requester or anyone in the public who has ties with the Requester with the names of the corrections officers who were with former inmate Keitel and their reports poses a security concern.

9. The names of the corrections officers should not be provided to the Requester as it is reasonable to conclude that this inmate may seek retribution for their involvement in a matter that led to the Requester receiving a sentence to life in prison.

10. The inmate could retaliate against the corrections officers by way of physical harm whether brought on by the Requester himself or by his associates.

\*\*\*

12. The potential for a corrections officer to suffer physical harm in the execution of his or her duties is an inherent risk of a corrections officer's job; however, by providing the information here would greatly increase that threat.

13. Corrections officers' duties include, inter alia, the enforcement of the law and prison rules and regulations; the investigation of threats to security; and the maintenance of order and discipline in the prison system.

9

14. Also the identity of these particular corrections officers to this inmate will further enable inmates and/or others to identify the officers, their residences, and their families to orchestrate threats, harassment, assaults, or physical harm, or to file fraudulent liens or other financially damaging documents. While specific examples of financial and physical harm exist, disclosure of those examples poses an inherent security risk because such information is reasonably likely to prompt inmates to repeat such activity. Suffice it to say, real damage to an officer's person or finances or to the person or finances of those individuals closest to the officer has been the result of disseminating information such as is requested here.

C.R., Item No. 3 (Declaration of Major Victor Miarchi).

Upon review, the Department's affidavits provided detailed information describing the nature of the information contained in the Report as well as the real danger posed in releasing the information, particularly the identity of the corrections officers. The affidavits included sufficient factual details for the OOR to determine that the release of the Report was reasonably likely to result in substantial and demonstrable risk of physical harm to or the personal security of the corrections officers identified in the Report. Thus, we conclude OOR properly determined the Report is not a public record as it falls within the personal security exemption.

Insofar as Requester argues for redaction, Section 706 of the RTKL, 65 P.S. §67.706, provides for redaction when the record contains information that is both subject to disclosure and exempt from disclosure. However, the redaction provision only applies to records that are first determined to be "public records." 65 P.S. §67.706. A record that falls squarely within one of the exceptions in Section 708 does not constitute a "public record" and redaction is not implicated. *Heavens v. Department of Environmental Protection*, 65 A.3d 1069, 1077 (Pa.

10

Cmwlth. 2013); *Department of Health v. Office of Open Records*, 4 A.3d 803, 815 (Pa. Cmwlth. 2010). As we determined the Report is not a public record, we reject Requester's argument that portions of the document, particularly the officers' names, are subject to disclosure.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lawrence Peterson,          :
                              : No. 1786 C.D. 2015
               Petitioner     :
                              :
          v.                :
                              :
Pennsylvania Department of  :
Corrections,                 :
                              :
            Respondent   :

## O R D E R

AND NOW, this 28th day of July, 2016, the final determination of the Office of Open Records, dated September 3, 2015, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge